FILE COPY

1  Laurence M. Rosen, Esq. (SBN 219683)
2  THE ROSEN LAW FIRM, P.A.
   355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
5  Email: lrosen@rosenlegal.com

6  Counsel for Plaintiff

7

2014 APR 18  PM 3: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
BY:_____

8                 UNITED STATES DISTRICT COURT
9                 CENTRAL DISTRICT OF CALIFORNIA

10  RANDY ROMERO, INDIVIDUALLY       CASE No.: CV14-03015-MRP(JEMx)
11  AND ON BEHALF OF ALL OTHERS
    SIMILARLY SITUATED,
12                                   CLASS ACTION
13           Plaintiff,
                                     **COMPLAINT FOR VIOLATION
14       v.                          OF THE FEDERAL SECURITIES
                                     LAWS**
15
16  GROWLIFE, INC., STERLING C.      **JURY TRIAL DEMANDED**
    SCOTT, JOHN GENESI, MARCO
17  HEGYI, ROB HUNT, ERIC SHEVIN,
    ALAN HAMMER, ANTHONY
18  CIABATTONI, AND JEFF
    GIARRAPUTO,
19
20           Defendants.
21
22

23       Plaintiff Randy Romero, individually and on behalf of all other persons
24
25  similarly situated, by his undersigned attorneys, for his complaint against the
26  defendants, alleges the following based upon personal knowledge as to himself and
27  his own acts, and information and belief as to all other matters, based upon, *inter*
28

1

*alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by the defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GrowLife, Inc. ("GrowLife" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than the defendants, who purchased the common stock of GrowLife between November 14, 2013 and April 9, 2014, inclusive (the "Class Period"), seeking to recover damages caused by the defendants' violations of federal securities laws (the "Class").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5.     In connection with the acts, conduct and other wrongs alleged herein, the defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Randy Romero purchased GrowLife common stock during the Class Period as set forth in his certification, filed herewith, and has suffered damages as a result.

7.     GrowLife is a Delaware corporation headquartered in Woodland Hills, California. It designs and manufactures indoor gardening products, such as grow room equipment, LED grow light products for indoor horticulture, mini-greenhouses, and other related products, primarily for the growing of medical marijuana. During the Class Period, GrowLife's common stock was actively traded on OTCQB, under the ticker "PHOT."

8.     Defendant Sterling C. Scott ("Scott") has been the Company's Chief Executive Officer, President, Secretary and a member of its Board of Directors ("Board") since April 2012.

3

9.      Defendant John Genesi ("Genesi") has been the Company's Chief Financial Officer since July 2013.

10.     Defendant Marco Hegyi ("Hegyi") has been the Company's President and a member of its Board since December 2013.

11.     Defendant Rob Hunt ("Hunt") has been the Company's Executive Vice Presidents and a member of its board since June 2013.

12.     Defendant Eric Shevin ("Shevin") was a member of the Company's Board from April 2013 until his sudden resignation in April 2014.

13.     Defendant Alan Hammer ("Hammer") has been a member of the Company's Board since December 2013.

14.     Defendant Anthony Ciabattoni ("Ciabattoni") has been a member of the Company's Board since December 2013.

15.     Defendant Jeff Giarraputo ("Giarraputo") has been a member of the Company's Board since December 2013.

16.     Defendants Scott, Genesi, Hegyi, Hunt, Shevin, Hammer, Ciabattoni, and Giarraputo are collectively referred to hereinafter as the "Individual Defendants."

17.     Each of the Individual Defendants:

        (a)     directly participated in the management of the Company;

        (b)     was directly involved in the day-to-day operations of the Company at the highest levels;

4

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)     approved or ratified these statements in violation of the federal securities laws.

18.     As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the OTCQB and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly traded stock to reflect truthful and accurate information.

19.     GrowLife is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to GrowLife under respondeat superior and agency principles.

## ALLEGATIONS OF FALSE STATEMENTS

21.     The Class Period begins on November 14, 2013, when GrowLife filed a Form 10-Q for the quarterly period ended September 30, 2013 ("2013 3Q 10-Q") with the SEC.

22.     With regards to the issuance of its common stock for services rendered, the Company stated in its 2013 3Q 10-Q, in relevant parts:

During the nine month period ended September 30, 2013, the Company issued 32,822,333 shares of its common stock for services rendered and wages to its employees. These shares were valued at $1,173,747 and are detailed as follows:

| Shares for Services | | |
|---|---|---:|
| Wages paid to Company employees | $ | 238,208 |
| Consulting | | 566,333 |
| Cannabis.org expenses | | 29,334 |
| GrowLife Productions expenses | | 65,000 |
| Public/Investor relations | | 221,700 |
| Product/inventory acquired | | 18,172 |
| **Board Member compensation** | | **35,000** |
| | $ | 1,173,747 |

[Emphasis added.]

23.     However, with regards to Board Member compensation in particular, the Company disclosed a different amount elsewhere in its 2013 3Q 10-Q, stating in relevant parts:

6

During the nine-month period ended September 30, 2013, the Company recorded ***$45,000*** in compensation to members of its Board of Directors, all of which was non-cash and paid via the issuance of shares of the Company's common stock.

[Emphasis added.]

24.     The Company further explained in its 2013 3Q 10-Q that it issued 1.0 million shares of its common stock to its Board Members as compensation and expensed the issuance at $0.2 per share, stating in relevant parts:

On September 30, 2013, the Company issued 1,000,000 shares of its common stock to its two (2) independent members of the Company's Board of Directors. These shares were issued on a non-cash basis and were compensation for services rendered during the April – June 2013 period. ***These shares were valued at $20,000 in the aggregate and $0.02 per share.***

[Emphasis added.]

25.     The 2013 3Q 10-Q was signed by Defendants Scott and Genesi. Accompanying the 2013 3Q 10-Q were separately executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants Scott and Genesi falsely attesting to the accuracy of the 2013 3Q 10-Q.

26.     On March 31, 2014, GrowLife filed a Form 10-K for the fiscal year ended December 31, 2013 ("2013 10-K") with the SEC.

27.     With regards to the issuance of its common stock for services, the Company stated in its 2013 10-K, in relevant parts:

During the twelve month period ended December 31, 2013, the Company issued 44,150,110 shares of its common stock for services

rendered and wages to its employees. These shares were valued at $1,428,636 and are detailed as follows:

| Shares for Services | | |
|---|---|---|
| Wages paid to Company employees | $ | 369,875 |
| Consulting | | 551,333 |
| Cannabis.org expenses | | 29,334 |
| GrowLife Productions expenses | | 65,000 |
| Public/Investor relations | | 321,700 |
| Product/inventory acquired | | 18,172 |
| **Board Member compensation** | | **73,222** |
| | $ | 1,428,636 |

[Emphasis added.]

28.     The Company explained in its 2013 10-K that it issued 10.5 million shares of its common stock to its officers as compensation and expensed the issuance at $0.1 per share, stating in relevant parts:

> *In March 2013, the Company issued 2,500,000 shares of its common stock to Sterling Scott*, the Company's Chief Executive Officer, as consideration for services provided to the Company. These shares represent an installment due to Mr. Scott in relation to a Board grant from August 2012. *The shares were valued at $25,000 in the aggregate.*

> *In March 2013, the Company issued 2,000,000 shares of its common stock to Justin Manns*, the Company's former Chief Financial Officer, a former member of the Company's Board of Directors, and the current Controller of GrowLife Hydroponics, Inc. The shares were issued as consideration for services provided to the Company. These shares represent an installment due to Mr. Manns in relation to a Board grant from August 2012. *The shares were valued at $20,000 in the aggregate.*

> *In November 2013, the Company issued 3,333,333 shares of its common stock to Sterling Scott*, the Company's Chief Executive Officer, as consideration for services provided to the Company. These shares represent the final installment due to Mr. Scott in relation to a

Class Action Complaint for Violation of the Federal Securities Laws

Board grant from August 2012. ***The shares were valued at $33,333 in the aggregate***.

***In November 2013, the Company issued 2,666,667 shares of its common stock to Justin Manns***, the Company's former Chief Financial Officer, a former member of the Company's Board of Directors, and the current Controller of GrowLife Hydroponics, Inc. The shares were issued as consideration for services provided to the Company. These shares represent the final installment due to Mr. Manns in relation to a Board grant from August 2012. ***The shares were valued at $26,667 in the aggregate.***

[Emphasis added.]

29.    The Company explained in its 2013 10-K that it issued approximately 3.9 million shares of its common stock to its Board Members as compensation and expensed the issuance at $0.2 per share, stating in relevant parts:

***During the twelve months ended December 31, 2013, the Company issued 1,500,000 shares of its common stock to Eric Shevin***, an independent member of the Company's Board of Directors, as consideration for his service as a Board member from April 1, 2013 through December 31, 2013. ***The shares were valued at $30,000 in the aggregate***.

***During the twelve months ended December 31, 2013, the Company issued 1,683,333 shares of its common stock to Bob Kurilko***, a former independent member of the Company's Board of Directors, as consideration for his service as a Board member from January 1, 2013 through November 2, 2013. ***The shares were valued at $33,667 in the aggregate.***

***During the twelve months ended December 31, 2013, the Company issued 500,000 shares of its common stock to Craig Ellins***, a former independent member of the Company's Board of Directors, as consideration for his service as a Board member from January 1, 2013 through March 31, 2013. ***The shares were valued at $10,000 in the aggregate.***

Class Action Complaint for Violation of the Federal Securities Laws

*On December 31, 2013, the Company issued 83,333 shares of its common stock to Alan Hammer*, an independent member of the Company's Board of Directors, as consideration for his service as a Board member from December 17, 2013 through December 31, 2013. *The shares were valued at $1,667 in the aggregate.*

*On December 31, 2013, the Company issued 72,222 shares of its common stock to Anthony Ciabattoni*, an independent member of the Company's Board of Directors, as consideration for his service as a Board member from December 19, 2013 through December 31, 2013. *The shares were valued at $1,444 in the aggregate.* Mr. Ciabattoni's shares have been issued to the Ciabattoni Living Trust, of which Mr. Ciabattoni is the Trustee.

*On December 31, 2013, the Company issued 72,222 shares of its common stock to Jeff Giarraputo*, an independent member of the Company's Board of Directors, as consideration for his service as a Board member from December 19, 2013 through December 31, 2013. *The shares were valued at $1,444 in the aggregate.*

Commencing in August 2012, outside board members were awarded 2,000,000 shares per year which vest quarterly.

[Emphasis added.]

30.    The Company also disclosed under the *Subsequent Events* section in its 2013 10-K that it issued 2.0 million shares of its common stock to its Board Members for services rendered during the first quarter of 2014 and expensed the issuance at $0.2 per share, stating in relevant parts:

*On March 31, 2014, the Company issued 500,000 shares, 2,000,000 shares in the aggregate, to each of its four (4) independent Board members as compensation for their Board service for the January 1, 2014 through March 31, 2014 period. The shares were valued at $0.02 per share and $40,000 in the aggregate* and were issued in accordance with an August 2012 Board grant. The four independent Board members are Eric Shevin, Alan Hammer, Tony Ciabatonni, and Jeff Giarraputo.

Class Action Complaint for Violation of the Federal Securities Laws

[Emphasis added.]

31.     The 2013 10-K was signed by Defendants Scott, Genesi, Hegyi, Hunt, Shevin, Hammer, Giarraputo, and Ciabattoni. Accompanying the 2013 10-K were separately executed SOX certifications of Defendants Scott and Genesi falsely attesting to the accuracy of the 2013 10-K.

## **THE TRUTH EMERGES**

32.     On April 9, 2014, the Company filed a Form 8-K with the SEC announcing the abrupt resignation of Defendant Shevin as a Board Member, which was effective as of April 1, 2014.

33.     Following the announcement of Defendant Shevin's resignation, the truth of GrowLife's materially inaccurate SEC filings began to reveal in a piecemeal fashion.

34.     On April 10, 2014, only a day after the announcement of Defendant Shevin's resignation, the SEC announced the temporary trading suspension of the Company's stock. The announcement states in relevant parts:

SECURITIES EXCHANGE ACT OF 1934
Release No. 71924 / April 10, 2014

The U.S. Securities and Exchange Commission announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading of the securities of GrowLife, Inc. ("PHOT"), of Woodland Hills, California at  9:30 a.m. EDT on April 10, 2014, and terminating at 11:59 p.m. EDT on April 24, 2014.

The Commission temporarily suspended trading in the securities of PHOT because of *questions that have been raised about the accuracy and adequacy of information in the marketplace and potentially manipulative transactions in PHOT's common stock.*

[Emphasis added.]

35.     On April 11, 2014, Creative Edge Nutrition, Inc., CEN Biotech and RXNB announced the termination of their agreement with GrowLife in light of the SEC's trading suspension. The announcement states in relevant parts:

MADISON HEIGHTS, MI--(Marketwired - Apr 11, 2014) - Creative Edge Nutrition, Inc. (OTC Pink: FITX) (PINKSHEETS: FITX), CEN Biotech and RXNB board of directors have decided to rescind the agreement between CEN Biotech, RXNB, GrowLife and OGI.

The Company has learned today that the U.S. Securities and Exchange Commission has suspended trading in the securities of GrowLife due to questions that have been raised about the accuracy and adequacy of information in the marketplace and potentially manipulative transactions in GrowLife's common stock. In light of this development and other contributing factors, RXNB and CEN Biotech have advised the CEO of GrowLife and the Board of OGI that both the RXNB Agreement and the CEN Biotech Agreement, and any and all amendments to those agreements, are rescinded, void and of no further force and effect.

36.     On that same day, analyst Rolling O Research published a report revealing inaccuracies with the Company's SEC filings, stating in relevant parts:

[L]et's just look at the three December 31, 2013 payments to the three newest directors, Hammer, Ciabattoni and Giarraputo. *They were awarded a total of 227,777 shares, which the company valued at $4,555 for expense purposes. Yet, at the December 31 closing price of $0.151, those shares should have resulted in a charge of $34,394. For these three directors alone, it appears that PHOT is understating its expenses by nearly $30 thousand.*

Looking at the Subsequent Event "future charges" shown above, the understatement would be even more astounding, due to the increase in PHOT's stock price during the quarter (assuming this is not corrected in the 10-Q for 1Q/14). ***On March 31, 2014, PHOT closed at $0.5795. Therefore, the 500 thousand share payments to each of the four directors, while being listed by Growlife as $40 thousand expense (at $0.02), should be recorded as a $1.159 million charge. That's a difference of $1.1M!***

[Emphasis added.]

37.     To date, trading in the Company's stock remains halted, making the Company's stock illiquid and virtually worthless.

## LOSS CAUSATION/ECONOMIC LOSS

38.     During the Class Period, the Individual Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated GrowLife's stock price and operated as a fraud or deceit on purchasers of GrowLife stock by misrepresenting the Company's business. Once the Individual Defendants' misrepresentations and fraudulent conduct were disclosed to the market, GrowLife's stock price reacted negatively as the artificial inflation was removed from it. As a result of their purchases of GrowLife stock during the Class Period, Plaintiff and other members of the Class suffered economic loss.

39.     The Individual Defendants' false and misleading statements had the intended effect and caused GrowLife stock to trade at artificially inflated levels throughout the Class Period.

40.     As investors and the market became aware of GrowLife's prior misstatements and omissions and that GrowLife's actual financial condition and business prospects were, in fact, not as represented, GrowLife's stock price reacted negatively, damaging investors.

## Applicability of Presumption of Reliance:
## <u>Fraud-on-the-Market Doctrine</u>

41.     At all relevant times, the market for GrowLife's common stock was an efficient market for the following reasons, among others:

(a)     GrowLife's stock met the requirements for listing, and was listed and actively traded on the OTCQB, a highly efficient and automated markets;

(b)     During the class period, millions of shares of GrowLife's stock were traded on a weekly basis on average, demonstrating a very strong presumption of an efficient market;

(c)     As a regulated issuer, GrowLife filed with the SEC periodic reports during the Class Period;

(d)     GrowLife regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

14

(e)     GrowLife was followed by securities analysts who wrote reports that were distributed during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous FINRA member firms were active market-makers in GrowLife stock at all times during the Class Period; and

(g)     Unexpected material news about GrowLife was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

42.     As a result of the foregoing, the market for GrowLife's common stock promptly digested current information regarding GrowLife from all publicly available sources and reflected such information in GrowLife's stock price. Under these circumstances, all purchasers of GrowLife's common stock during the Class Period suffered similar injury through their purchase of GrowLife's common stock at artificially inflated prices, and a presumption of reliance applies.

## <u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of GrowLife during the Class Period and who were damaged thereby. Excluded from the Class are the defendants, the current and former officers and directors of the Company, members of their immediate

families and their legal representatives, heirs, successors or assigns and any entity in which the defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, GrowLife's common stock was actively traded on the OTCQB. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by GrowLife or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by the defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by the defendants' acts as alleged herein;

(b)    whether the misstatements and omissions alleged herein were made with scienter;

(c)    whether statements made by the Individual Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, prospects, and operations of GrowLife; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All The Defendants

49.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.    This First Claim is asserted against Defendant GrowLife, and the Individual Defendants.

17

51.     During the Class Period, the defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell GrowLife common stock at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, the defendants, individually and as a group, took the actions set forth herein.

52.     The defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of GrowLife as specified herein.

53.     The defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of GrowLife's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about GrowLife and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions,

practices and a course of business that operated as a fraud and deceit upon the purchasers of GrowLife's common stock during the Class Period.

54.     Each of the defendants' primary liability, and controlling person liability, arises from the following facts: (1) the defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of the defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the defendants culpably participated in the wrongful conduct alleged herein.

55.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or

omissions were done knowingly or recklessly and for the purpose and effect of concealing GrowLife's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its common stock. As demonstrated by the defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, the defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for GrowLife's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of GrowLife's publicly-traded common stock were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by the defendants, or upon the integrity of the market in which the Company's common stock trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the defendants but not disclosed in public statements by the defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold GrowLife common stock during the Class Period at artificially high prices and were damaged thereby.

57.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding GrowLife's financial results, which were not disclosed by the defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired GrowLife common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

58.    By virtue of the foregoing, the defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of the defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

60.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation Of Section 20(a) of The Exchange Act
### Against the Individual Defendants

61.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     This Second Claim is asserted against each of the Individual

Defendants.

63.     The Individual Defendants acted as controlling persons of GrowLife

within the meaning of Section 20(a) of the Exchange Act as alleged herein. By

virtue of their high-level positions, agency, and their ownership and contractual

rights, participation in and/or awareness of the Company's operations and/or

intimate knowledge of aspects of the Company's revenues and earnings and

dissemination of information to the investing public, the Individual Defendants had

the power to influence and control, and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are false and

misleading. The Individual Defendants were provided with or had unlimited access

to copies of the Company's reports, press releases, public filings and other

statements alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued, and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected.

64.     In particular, each of these defendants had direct and supervisory

involvement in the day-to-day operations of the Company and, therefore, is

presumed to have had the power to control or influence the particular transactions

giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, GrowLife violated Section 10(b) and Rule 10b-5. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of the defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

66.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all the defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: April 18, 2014                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| RANDY ROMERO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | SEE ATTACHED |

| (b) County of Residence of First Listed Plaintiff  ADAMS | County of Residence of First Listed Defendant  LOS ANGELES |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)*, If you are representing yourself, provide the same information. |
|---|---|
| The Rosen Law Firm, P.A. 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071 Tel: (213) 785-2610 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Securities Class Action pursuant to 15 U.S.C. § 78j(b) and 78t(a), Rule 10b-5, and17 C.F.R. § 240.10b-5

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee ☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | **Other:** | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 865 RSI (405 (g)) |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

0b14-03015

**FOR OFFICE USE ONLY:**     Case Number:

CV-71 (11/13)                              CIVIL COVER SHEET                              Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes   ☒ No | A. PLAINTIFF? then check the box below for the county in which the majority of DEFENDANTS reside. | A. DEFENDANT? then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | WESTERN |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 4/17/14

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**ORIGINAL**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| RANDY ROMERO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) |
| ───────────────────────────── | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| SEE ATTACHED | ) ) |
| | ) |
| ───────────────────────────── | ) |
| *Defendant(s)* | ) |

Civil Action No.

CV14-03015- MRP(JEMx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> The Rosen Law Firm, P.A.
> 355 S. Grand Avenue, Suite 2450
> Los Angeles, CA 90071
> Tel: (213) 785-2610
> Fax: (213) 226-4684

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 4/18/2014

CLERK OF COURT

Signature of Clerk or Deputy Clerk

1202

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Mariana R. Pfaelzer_____ and to
Magistrate Judge _____John E. McDermott_____ .

The case number on all documents filed with the Court should read as follows:

### 2:14-cv-03015-MRP(JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of
California, the assigned Magistrate Judge has been designated to hear discovery-related
motions. The United States District Judge assigned to this case will review all filed discovery
motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery-
related motions to the Magistrate Judge for hearing and determination.

Clerk, U. S. District Court

April 18, 2014                          By  APEDRO _____
_____                          Deputy Clerk
Date

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases
removed from state court, on all parties served with the Notice of Removal) by the party who filed the
Complaint (or Notice of Removal).*

CV-18 (04/14)                NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

GROWLIFE, INC., STERLING C.
SCOTT, JOHN GENESI, MARCO
HEGYI, ROB HUNT, ERIC SHEVIN,
ALAN HAMMER, ANTHONY
CIABATTONI, AND JEFF
GIARRAPUTO,

Defendants.